IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

OMAR FAJARDO,

    Plaintiff,

v.                                                     Civ. No. 15-333 JCH/KBM

AARON BARRERA,
et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

       This matter is before the Court on the motion to quash [Doc. 7] by Margaret Katze, an Assistant Federal Public Defender in the District of New Mexico. In the motion, Katze seeks an order quashing an order by the Second Judicial District Court, Bernalillo County, New Mexico, appointing her to serve as an arbitrator in a civil lawsuit brought in state district court. For the reasons more fully set forth herein, the Court concludes that the motion should be granted.

## BACKGROUND

       On November 18, 2014, Plaintiff Omar Fajardo filed his complaint in the Second Judicial District Court, Bernalillo County, New Mexico ("Second Judicial"). In that complaint, he asserts a personal injury claim arising from a collision with a car driven by Defendant Aaron Barrera. On March 3, 2015, acting under Second Judicial District Local Rule LR2-603, a state court judge entered an order appointing Katze to serve as an arbitrator in the case. On April 23, 2015, Katze removed the state court action to this Court in accordance with 42 U.S.C. 1442(a)(1). In her motion to quash, Katze argues that federal law, 18 U.S.C. § 3006A(g)(2)(A), as well as the ethical code of conduct applicable to Assistant Federal Public Defenders, prohibit her from

serving as an arbitrator as required by LR2-603. Thus, Katze contends that the appointment order places her in an untenable position by either requiring her to violate federal law or to endure sanctions by Second Judicial. Katze made that argument to Second Judicial, but her request for an exemption was denied.

Second Judicial has intervened in this case and, after an extended delay[1], filed a response to Katze's motion to quash. Doc. 20. It argues that the removal of this case was improper and that Katze's participation as an arbitrator does not implicate a federal interest or violate federal law.

## DICUSSION

### I.  THE STATUTORY PROVISIONS AT ISSUE

#### A.  The Arbitration Program

Second Judicial has a local rule, approved by the New Mexico Supreme Court, providing for court-annexed arbitration in certain civil cases. *See generally* N.M. R. Civ. Pro. LR2-603. That rule requires that all active members of the New Mexico State Bar who have been licensed for at least five years and who either reside or work in Bernalillo County must be available to serve as arbitrators for civil cases in which less than $25,000 is at stake. LR2-603(II)(A) and (IV)(A). Under the rule, an attorney may be excused from the pool of arbitrators for good cause, or from service in a particular case for conflicts of interest or a showing of good cause. LR2-603(IV)(A) and (IV)(C)(4). Arbitrators are compensated in the amount of $100 per case. LR2-

---

[1] On May 8, 2015, Katze filed her motion to quash. On May 12, 2015, counsel for Second Judicial entered his appearance in the case. On May 13, 2015, Second Judicial filed a motion to intervene in the case, which the Court granted on May 21, 2015. Months passed without Second Judicial filing a response to Katze's motion to quash. Finally, on November 17, 2015, this Court entered an order to show cause by November 24 why the motion to quash should not be granted. Second Judicial did not, in fact, show cause by that date, but instead filed a motion requesting until November 25, 2015 to file a response to the motion. This Court granted that motion, granting Second Judicial until December 3, 2015 to file its response. The Court has accepted that response, even though it was not filed until December 4, 2015.

603(IV)(D). The arbitrator must personally conduct the hearings and trial (if one is necessary) and must personally sign decisions and the award. LR2-603(V)(A)(2). The arbitrator must file his award (final decision) within 120 days after the arbitrator is appointed. LR2-603(V)(A)(5). However, upon a motion by the arbitrator or one of the parties, the court may extend that period. *Id*. If the arbitrator fails to file an award within the designated period, "the court after written notice may impose an appropriate sanction including but not limited to requiring the arbitrator or party to pay a penalty into the second judicial district arbitration fund." *Id*. The arbitrator must set hearings during regular business hours except upon agreement of the parties. LR2-603(V)(B)(1). Within ten days after the last hearing, the arbitrator must file his award with the clerk and serve copies on all parties, or face sanctions. LR2-603(V)(D)(3).

    **B.**    **Statutes And Rules Governing Conduct Of Assistant Federal Public Defenders**

Congress enacted 18 U.S.C. § 3006A to create a system in criminal cases to furnish representation for any person financially unable to obtain adequate representation. *Id*. at § 3006A(a). The same statute also provides for the creation of offices of federal public defenders, also known as Federal Public Defender Organizations. *Id*. at § 3006A(g)(2)(A).

Federal Public Defender Organizations, such as the Office of the Federal Public Defender for the District of New Mexico, operate under the guidance and supervision of the judicial branch of the federal government. To wit, the statute requires the court of appeals for the circuit—in this case, the Tenth Circuit—to appoint one Federal Public Defender per district and to set his or her salary. *Id*. In turn, the Federal Public Defender may appoint assistant FPDs in a number approved by the circuit court of appeals. *Id*. The Federal Public Defender may also appoint other staff "in such number as may be approved by the Director of the Administrative Office of the United States Courts." *Id*. In addition to overseeing the staffing of Federal Public

Defender Organizations, the judicial branch also reviews its internal operations. For example, each Federal Public Defender Organization must submit reports of its activities and financial position and its proposed budget to the Director of the Administrative Office of the United States Courts. *Id*. In addition, the Director of the Administrative Office submits a budget for each organization for each fiscal year and distributes money among them accordingly. *Id*. Finally, the statute creating the office specifically provides that neither the Federal Public Defender nor any attorney so appointed by him may engage in the private practice of law. *Id*.

Because Federal Public Defenders and their assistants fall under the purview of the judicial branch, the judiciary has created ethical rules of conduct that govern their behavior. The *Guide to Judiciary Policy*, which governs the behavior of federal judges and court staff, also contains rules applicable to attorneys practicing in Federal Public Defender Organizations. For example, one of these rules states that "A Federal Public Defender Employee Should Regulate Extra-official Activities to Minimize the Risk of Conflict with Official Duties." *Guide to Judiciary Policy*, Vol. 2, Chap. 4, § 420, Canon 5. The *Guide* goes on to state that "[a] defender employee should not engage in the private practice of law." *Id*. at Canon 5D.

It is not always obvious what the practice of law encompasses. Again, the *Guide* lends insight. It contains a compendium of selected published and unpublished opinions issued by the Committee on Codes of Conduct. It states: "An assistant federal public defender may not accept appointment as an arbitrator; such action would violate the proscription against the practice of law in Canon 5D of the Code of Conduct for Federal Public Defender Employees." *Guide to Judiciary Policy*, Vol. 2B, Ch. 3, Compendium § 4.1-5[1](a-1) (October 2015).

4

## II.     PROPRIETY OF REMOVAL[2]

### A.     Removal By A Federal Officer Generally

Section 1442(a)(1) of Title 28 authorizes the removal to federal court of a civil action or a criminal prosecution commenced in a state court against persons who are acting in the course of their employment by or on behalf of the United States. It provides: "A civil action or criminal prosecution that is commenced in a State court and that is against or directed to [a federal officer] may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending." 28 U.S.C. § 1442(a)(1). The statute has been applied in cases involving a wide spectrum of civil and criminal substantive contexts, and the right to remove has been invoked by a tremendous variety of federal officers and persons acting under the direction of federal officers. *See* 14C Fed. Prac. & Proc. Juris. § 3726 (4th ed.). Whatever the nature of the proceeding, to be removable under Section 1442 an action must be predicated on acts done under color of the actor's governmental office. It is only when the conduct is under color of the defendant's office that the defendant may have a federal defense, and without such an ostensible defense the action is not removable under Section 1442. *Mesa v. California*, 489 U.S. 121, 139 (1989); *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Section 1442 represents an exception to the well-pleaded complaint rule in the removal context because issues generally thought to be defensive in character, rather than the content of the plaintiff's

---

[2] This Court encountered a substantially similar issue in *Asset Acceptance v. Delgado*, Civ. No. 14-788 JH, wherein the Second Judicial District Court attempted to appoint an Assistant United States Attorney from the District of New Mexico as an arbitrator under Local Rule LR2-603. In a Memorandum Opinion and Order in *Delgado*, the Court concluded that removal was proper under 42 U.S.C. § 1442(a)(1). *Id.*, Doc. 21 (June 9, 2015) (unpublished). For substantially similar reasons set forth in *Delgado*, the Court reaches the same conclusions here and incorporates the reasoning from that ruling into this Memorandum Opinion and Order. The Second Judicial District Court appealed the Court's ruling in *Delgado* to the Court of Appeals for the Tenth Circuit, where it remains pending as of the time of the entry of this Memorandum Opinion and Order.

claim, provide its foundation. See *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) ("[R]emovals under section 1441 are subject to the well-pleaded complaint rule, while those under section 1442 are not.").

The purpose of Section 1442(a)(1) is to protect federal officials from civil or criminal liability for the performance of their official duties. *Charges of Unprofessional Conduct Against 99-37 v. Stuart*, 249 F.3d 821, 824 (8th Cir. 2001); *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989) (per curiam). Thus, the federal courts' philosophy generally is to construe Section 1442 broadly in order to effectuate its purpose to protect federal interests. *Pretlow v. Garrison*, 420 Fed. Appx. 798, 800 (10th Cir. 2011) (citing *Durham*, 445 F.3d at 1253); *Nationwide Investors v. Miller*, 793 F.2d 1044, 1045-46 (9th Cir. 1986); *Overman v. United States*, 563 F.2d 1287, 1290-91 (8th Cir. 1977). It permits removal of actions that expose a federal official to civil liability or criminal for past actions, as well as for civil matters that seek to either prohibit or require certain actions by the official in the future. *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989). As the Supreme Court has stated:

> The various acts of Congress constituting the section as it now stands were enacted to maintain the supremacy of the laws of the United States by safeguarding officers and others acting under federal authority against peril of punishment for violation of state law or obstruction or embarrassment by reason of opposing policy on the part of those exerting or controlling state power. … It scarcely need be said that such measures are to be liberally construed to give full effect to the purposes for which they were enacted. . . .

*Colorado v. Symes*, 286 U.S. 510, 517-518 (1932) (Butler, J.).

**B.     The Applicability Of § 1442(a)(1) In This Case**

There do not appear to be any reported cases in which a federal government attorney removed a case to federal court under Section 1442 to seek protection from a state court order appointing her as an arbitrator. However, as further explained below, precedent in similar cases

demonstrates that by raising a colorable federal defense to the appointment order, Katze has done enough to satisfy the requirements of the removal statute. Indeed, it is the presence of a federal defense in the form of 18 U.S.C. § 3006A(g)(2)(A) and the *Guide to Judiciary Policy* that makes this case removable under § 1442(a)(1). *See Mesa v. California*, 489 U.S. 121, 139 (1989).

The most similar cases regarding the applicability of § 1442(a)(1) appear to be ones in which a federal officers removed a case to federal court to seek protection from a subpoena issued in state court proceedings requiring the officer to provide information obtained in the course and scope of his employment with the government. According to Second Judicial, those cases were removable because the information being subpoenaed by the state related to the witnesses' federal employment and therefore implicated a federal interest. Second Judicial argues that such cases are not analogous to the facts presented here because Katze's appointment as arbitrator will not interfere with her federal duties or any federal interest. However, this argument overlooks the key requirement of a federal defense. If a federal agent is subpoenaed to testify in his *personal* capacity or to produce personal documents, there is no federal defense (e.g., no federal regulation) to prevent him from doing so. That is not true here, where the case raises a direct conflict between the federal statute governing the practice of law by Federal Public Defender employees and a state court order. In all the subpoena cases cited and relied upon by Katze, as well as in this case, the basis for refusing to obey the state court order is a federal statute or regulation governing the manner in which the federal agent performs his professional duties. Here, the federal government employs Katze and the other Assistant Federal Public Defenders *as lawyers,* and Congress has passed a statute, 18 U.S.C. § 3006A(g)(2)(a), governing and limiting other work that they may do *as lawyers* on the grounds that outside legal work may interfere with the legal work they perform in their official capacities. In addition,

7

Katze and other Assistant Federal Public Defenders are subject to the ethical rules in the *Guide to Judiciary Policy* solely by virtue of their official duties as public defenders employed by the United States and overseen by the Judicial Conference and the Administrative Office of the United States Courts. As a result of this federal defense, Section 1442(a)(1) applies.

      Second Judicial also argues that an order to serve as an arbitrator is materially different than a subpoena to produce documents or testify because the latter is "directed against" the federal employee. It is true that some courts have interpreted narrowly Section 1442's requirement that civil or criminal proceedings have been commenced against a federal officer before removal will be proper. For instance, in *Indiana v. Adams*, 892 F. Supp. 1101 (S.D. Ind. 1995), the court refused to allow removal on the basis of the issuance of a subpoena to compel discovery against FBI technicians. On the motion to remand, the district court held that although institution of a contempt action to compel discovery would constitute the commencement of a civil or criminal proceeding against a federal officer within the meaning of the statute, issuance of a subpoena was a purely ministerial act under Indiana law, and as such did not entitle the officer to a federal forum. The court acknowledged that Congress intended an expansive reading of Section 1442, yet decided that the statute "… would be stretched well beyond its intent by an interpretation that an action had been 'commenced' against a federal officer before the state trial court had taken any substantive steps to coerce the federal official to comply with a subpoena or other discovery request." *See also Alabama v. Stephens*, 876 F. Supp. 263 (M.D. Ala. 1995) (remanding because no contempt proceedings had begun in state court and because it was uncertain whether the federal officer would refuse to testify in compliance with his employer's instructions).

The Court is unconvinced by the reasoning of *Adams* and *Stephens*. A subpoena to testify or produce documents is simply a command from the court that the respondent must perform a particular act. The same is true of the order in this case directing Katze to serve as a court-annexed arbitrator. Second Judicial has admitted that it claims to have the right to sanction a federal officer who, in compliance with federal law, refuses to serve as an arbitrator under the Local Rule. Similarly a federal officer who, in accordance with federal law, refuses to testify or produce evidence under state court subpoena may face contempt proceedings. In both instances, a state court is attempting to compel a federal officer to do something that federal law states he must not do. Both types of orders subject the federal officer to the choice between compliance with state law or federal law, but not both.

For this reason, other district courts have found Section 1442 removal proper under the same circumstances, even when a dispute over a federal officer's obligation to testify or produce documents has not yet culminated in contempt proceedings. For example, in *Ferrell v. Yarberry*, 848 F. Supp. 121 (E.D. Ark. 1994), the court held that removal is proper when plaintiff seeks to subpoena testimony of nonparty officials of the Department of Agriculture, reasoning that the risk that an officer might be held in contempt for not testifying is enough to qualify case for removal under federal officer statute. Similarly, in *People of California v. Reyes*, 816 F. Supp. 619, 622 (E.D. Cal. 1992), the district court concluded it had jurisdiction to hear a motion to quash subpoena issued by state court ordering federal officer to testify, even though state judge had not yet held the official in contempt, when it was clear from the record that the state court had every intention of doing so in absence of ruling from federal court that it lacked authority to do so and such contempt proceeding would be removable to federal court.

The Court agrees with the reasoning of *Ferrell*, *Reyes*, and similar cases. In *Nationwide Investors v. Miller*, 793 F.2d 1044, 1045 (9th Cir. 1986), the court explained that when a federal agent ignores a court order, be it a subpoena, summons or other directive, he does so under threat of a civil lawsuit or a contempt proceeding. *Id*. Eventually, if the officer continues to follow federal law, he will be sued by the party trying to enforce the state court order or he will be the target of a contempt proceeding. *Id*. at 1046. At that point, the federal agent will be a defendant in a "civil action" under Section 1442(a)(1) and will be able to remove. *Id*. Requiring the federal officer to wait until that point to remove "is worse than an empty gesture, because it encourages the government to disobey state court process so that the government can obtain a federal forum." *Id*. at 1047. Thus, the Ninth Circuit held that a federal officer summoned in a state court garnishment proceeding under threat of fine or imprisonment could remove under Section 1442(a)(1) and was not required to wait to remove until after he had been found in contempt or fined. Similarly, the D.C. Circuit has recognized that "the courts have long interpreted [Section 1442(a)] to include matters, such as subpoenas, that are only incidents of civil and criminal actions, yet have the same interference effect" of actions brought directly against federal officers. *Maddox v. Williams*, 855 F. Supp. 406, 409 (D.D.C. 1994). "Indeed, . . . the law is that a federal official need not wait for a contempt citation before removing his case to federal court." *Id*. at 410 n.12. The Fifth Circuit is in accord, holding that removal under Section 1442 prior to formal initiation of contempt proceedings is not premature if the federal officer refuses to comply with a subpoena based on federal law. *State of Louisiana v. Sparks*, 978 F.2d 226, 231-32 (5th Cir. 1992). "To require [a federal officer] run the risk of a contempt citation—not to mention fines or incarceration—simply because he complies with his federal duty would be imprudent and defeat the larger purpose of the federal officer protection removal statute." *Id*. at 232. *See also Brown*

*& Williamson v. Williams*, 62 F.3d 408, 414-15 (D.C. Cir. 1995). By the same token, Katze was not obligated to wait until she was subject to sanctions or contempt proceedings prior to removing this case.

Katze removed this case based on a federal defense, and did so because this matter is "against or directed to" her as a federal official. Accordingly, the Court holds that that removal of this case under 28 U.S.C. 1442(a)(1) was proper.

## II. MOTION TO QUASH

Having concluded that removal of the case was proper, the Court now must decide whether to quash the Second Judicial's order appointing Katze to act as arbitrator in the underlying personal injury action. Katze has refused to serve in the court-annexed arbitration program on the grounds that acting as an arbitrator is the outside practice of law prohibited by 18 U.S.C. § 3006A(g)(2)(A) and barred by the Judicial Conference. Second Judicial, in turn, argues that service as a court-appointed arbitrator neither constitutes the "private practice of law," nor implicates any federal interest.

"Supremacy Clause immunity governs the extent to which states may impose civil or criminal liability on federal officials for alleged violations of state law committed in the course of their federal duties." *Wyoming v. Livingston*, 443 F.3d 1211 (10th Cir. 2006). In *Touhy v. Ragen*, 340 U.S. 462 (1951), the Supreme Court found that an FBI agent had properly refused to produce federal government records subpoenaed by a state court. The agent's refusal was in accordance with a validly enacted Order of the U.S. Attorney General. *Id*. at 469. As a result, the Court concluded that the FBI agent could not be held in contempt of the state court order. *Id*. at 470. Many other courts have since concluded that a state court cannot compel a federal agent to testify or produce documents when there is a valid federal regulation prohibiting him from doing

so. *See, e.g., Charges of Unprofessional Conduct Against 99-37 v. Stuart*, 249 F.3d 821 (8th Cir 2001); *Smith v. Cromer*, 159 F.3d 875 (4th Cir. 1998); *State of Louisiana v. Sparks*, 978 F.2d 226, 234-36 (5th Cir. 1992); *Nationwide Investors v. Miller*, 793 F.2d 1044 (9th Cir. 1986); *FBI v. Superior Ct. of Cal.*, 507 F. Supp.2d 1082, 1092-94 (N.D. Cal. 2007).

Second Judicial argues that conducting an arbitration as outlined in its local rule LR2-603 is not the "practice of law" because arbitrators do not counsel clients or have confidential attorney-client communications with the participants. The Court believes that Second Judicial takes too narrow a view of the term "practice of law" in 18 U.S.C. § 3006A(g)(2)(A). Under its local rule, Second Judicial requires arbitrators to conduct hearings and trials during regular business hours (unless the parties agree otherwise), rule on motions, weigh evidence, and apply law to facts. To properly do these things, arbitrators must understand and apply many complex legal concepts, such as the rules of civil procedure, the rules of evidence, and the applicable substantive law governing the case. These things are at the heart of what lawyers do, which is underscored by the fact that in order to be a court-annexed arbitrator in Second Judicial District Court one must be an actively practicing member of the bar with at least five years of experience in the practice of law. If it were otherwise, Second Judicial could appoint non-lawyers to the task. The fact that it chooses not to do so speaks volumes. Thus, the Court concludes that to act as an arbitrator in the manner described in Second Judicial's local rule is the practice of law and therefore prohibited by Section 3006A(g)(2)(A).

Second Judicial argues that even if acting as an arbitrator is "practice of law," it is not "private" practice because an arbitrator does not have a relationship of trust or reliance with a client. Second Judicial points out that the Criminal Justice Act does not define the term "private practice," and instead relies on inapposite court opinions interpreting "practice of law" as it is

used in state court rules and statutes other than 18 U.S.C. § 3006A. None of the authorities cited by Second Judicial, *see* Doc. 20 at 8, help to illuminate what is meant by the "private practice of law" in 18 U.S.C. § 3006A(g)(2)(A).

Fortunately, this Court need not rely upon interpretations of various rules in other states or of other federal statutes in order to construe the phrase "private practice of law" in 18 U.S.C. § 3006A(g)(2)(A) because the Judicial Conference has done so. As described above, the *Guide to Judiciary Policy*, Vol. 2B, Ch. 3, Compendium § 4.1-5[1](a-1) (October 2015) contains a compendium advising federal public defender employees that they may not accept appointments to act as arbitrators. In response, Second Judicial argues that the contents of the *Guide* are not valid regulations and the ethical rules set forth therein do not have the force of law. However, this Court need not reach the question of whether the Guide is a "valid regulation," because there is no doubt that 18 U.S.C. § 3006A(g)(2)(A) is valid statute, and that it prohibits federal public defender employees from private practice of law. It is the province of the federal courts to interpret federal statutes, and that is what the Judicial Conference has done in issuing its advisory opinion that an assistant federal public defender may not act as an arbitrator. Because the Office of the Federal Public Defender operates under the administration and supervision of the judicial branch, the Judicial Conference is in a unique position to interpret § 3006A(g)(2)(A). Therefore, its advisory opinion is, at the very least, highly persuasive authority that acting as an appointed arbitrator is prohibited private practice of law.

Next, Second Judicial argues that Katze's participation in the court-annexed arbitration program does not implicate a federal interest because there is neither an adversarial element nor a nexus between the appointment order and Katze's official job duties. The Court addressed these arguments in Part II, *supra*, and will not repeat them here. Suffice to say that the federal

government has seen fit to create the Office of the Federal Public Defender, to employ Katze and the other Assistant Federal Public Defenders *as lawyers,* and to enact a statute, 18 U.S.C. § 3006A(g)(2)(a), governing and strictly limiting any other work that they may do *as lawyers* on the grounds that outside legal work may interfere with the work they perform in their official capacities providing legal representation to the indigent. Congress has clearly set forth the federal interest in retaining their work as lawyers solely for itself, and it is not for Second Judicial or this Court to argue otherwise. And, as explained above, there is an adversarial element because Second Judicial claims the right to sanction lawyers who refuse to perform their duties as appointed arbitrators.

Finally, Second Judicial puts forth the red-herring argument that Katze must show that fulfilling her duties as an arbitrator will materially conflict with her official duties as an Assistant Federal Public Defender. This is a moot point, because as previously explained Congress has already determined that public defender employees may not engage in the private practice of law because it will interfere with their duties—that is at the heart of the prohibition in § 3006A(g)(2)(a). Under the Supremacy Clause, this federal law trumps Second Judicial's local rule.

Accordingly, Katze will not be required to serve as a court-annexed arbitrator, and this case will be remanded to the Second Judicial District Court, Bernalillo County, New Mexico, for adjudication of the underlying personal injury lawsuit.

**IT IS HEREBY ORDERED** that the motion to quash [Doc. 7] by Margaret Katze, an Assistant Federal Public Defender in the District of New Mexico, is **GRANTED**, and the Order

of the Second Judicial District Court appointing her as arbitrator in *Fajardo v. Barrera* is **QUASHED** on grounds of sovereign immunity.

    **IT IS FURTHER ORDERED** that this case is **REMANDED** to the Second Judicial District Court, Bernalillo County, New Mexico.

_____
**UNITED STATES DISTRICT JUDGE**